PEOPLE v TRONTI

Docket No. 102594. Submitted November 15, 1988, at Lansing. Decided April 18, 1989. Leave to appeal applied for.

Robert G. Tronti was convicted of assault with intent to do great bodily harm, carrying a dangerous weapon with unlawful intent, and possession of a firearm during the commission of a felony at the conclusion of a jury trial in Luce Circuit Court, William F. Hood, J. Defendant appealed, claiming that the trial court erred, so as to require reversal, in granting a pretrial discovery motion brought by the prosecutor, by which motion defendant was compelled to disclose the names of defense witnesses, all of whom were res gestae witnesses, and any statements made by such witnesses to an investigator employed by defendant.

The Court of Appeals *held:*

1. In criminal cases, a trial court has inherent power to grant or deny discovery orders at its discretion.

2. Assuming, without deciding, that the statements at issue were protected from disclosure by the work product doctrine, any error by the trial court in compelling their disclosure was harmless in the absence of a showing of prejudice to defendant.

Affirmed.

1. CRIMINAL LAW — DISCOVERY.

In criminal cases, a trial court has inherent power to grant or deny discovery orders at its discretion.

2. CRIMINAL LAW — DISCOVERY — WORK PRODUCT DOCTRINE.

Where a trial court's discovery order is found on appeal to be violative of the work product doctrine, such error by the trial court is harmless and is not a ground for the reversal of the defendant's conviction unless the defendant was prejudiced thereby.

*Frank J. Kelley,* Attorney General, *Louis J.*

REFERENCES
Am Jur 2d, Depositions and Discovery §§ 6, 50-67.
See the Index to Annotations under Work Product Doctrine.

*Caruso,* Solicitor General, *James P. Hoy,* Prosecuting Attorney, and *Tonatzin M. Alfaro Garcia,* Assistant Attorney General, for the people.

State Appellate Defender (by *Derrick A. Carter*), for defendant on appeal.

Before: SHEPHERD, P.J., and GRIBBS and G. S. ALLEN,* JJ.

PER CURIAM. Defendant was convicted by a jury of assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, carrying a dangerous weapon with unlawful intent, MCL 750.226; MSA 28.423, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Sentenced on June 15, 1988, to two to ten years in prison on the first count, six months to five years on the second count, and to a mandatory two years for felony-firearm, defendant appeals as of right. We affirm.

Defendant was charged following a shooting outside of the Airport Bar in Newberry Township. Testimony at trial disclosed that on February 16, 1987, the defendant and Robert Taylor were in the Airport Bar drinking with their friends. As the evening wore on Taylor from time to time made disparaging remarks concerning defendant and was told to quiet down by the bartender, who also owned the bar. Eventually defendant began to leave the bar, first stopping by where Taylor was sitting and openly challenging him to come outside and settle things. Defendant and Taylor, each accompanied by two or more friends, then left the Airport Bar. Defendant walked to a parked car, removed a .25 caliber gun from the glove compart-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

ment and, as Taylor approached him in a threatening manner, raised the gun and fired one shot striking Taylor in the chest. At trial, defendant raised self-defense and intoxication as defenses.

Prior to trial in circuit court, the prosecution moved to discover the names of defense witnesses and the statements they made to a defense investigator who the prosecution alleged presented himself to the witnesses as someone from the prosecutor's office. At a hearing on the motion, the prosecution argued that the motion related only to the statements taken by the investigator and did not involve any legal theories, planning, strategy or defenses that the defendant might have in mind. The prosecutor argued that most of the statements taken were from persons whom the prosecution would call as witnesses and that the prosecution was entitled to know if the witnesses were making inconsistent statements. The trial court granted the motion explaining:

> Well, the prosecutor's motion is granted. The trend certainly is to increase the right of the prosecutor to discover the defendant's case and to make more equal the ability to obtain information in advance of the trial as to what the witnesses— what witnesses will be called form [sic] each side and also any statements that those witnesses have made.
>
> It has long been the rule that the prosecutor not only has to name his witnesses, but make available to defense counsel the statements of any of the witnesses, any of such witnesses. And I really see no harm in allowing the prosecutor the same privilege as the defendant has.
>
> I'm not asking the defendant to violate his privilege against self-incrimination, but only to disclose in advance of the trial what witnesses he was going to call and any statements that those witnesses have made.

> This is not a violation of any work product privilege because such product applies only to the matters pertaining to opinion, impressions, and the like, the validity of theories, and matters of this kind. It does not apply to written statements of witnesses, of prospective witnesses. So the motion will be granted.

The single issue raised on appeal is whether the trial court erred in granting the prosecution's motion to discover the names of defense witnesses and the statements they made to a defense investigator who, according to the prosecution, presented himself to the witnesses as someone from the prosecutor's office.

Defendant argues that the trial court's order of discovery is error which requires reversal because: (1) it is contrary to *People v Paris,* 166 Mich App 276, 278-280; 420 NW2d 184 (1988), which held that, until our Supreme Court approves the broader rules of criminal discovery set forth in proposed MCR 6.205 (422A Mich 79), a trial court is without the power to order the disclosure of anything other than the defense of insanity or diminished capacity, MCL 768.20a; MSA 28.1043(1), or the defense of alibi, MCL 768.20; MSA 28.1043; (2) statements given to an investigator for the defense are as much a work product as if prepared by defense counsel himself and under *United States v Nobles,* 422 US 225; 95 S Ct 2160; 45 L Ed 2d 141 (1975), are shielded from discovery by the work product doctrine.

In answer, the prosecution argues: (1) that defendant reads *Paris* far too broadly and, (2) assuming arguendo that the trial court erred as to the work product rule, defendant has not established or even alleged prejudice, and thus any error is harmless.

We agree that defendant construes *Paris* too

broadly. Contrary to defendant's contention, the factual situation in *Paris* is not comparable to the instant case. There, the requested discovery was broad and all-inclusive, going so far as to include memoranda of oral statements made by defense witnesses, reports prepared by defendant's experts, and any tangible evidence in defendant's possession. The requested discovery could only have been granted pursuant to the broad discovery powers proposed under MCR 6.205, which was pending before the Supreme Court. 166 Mich App 278. In the instant case, the request for discovery was limited to statements of persons who were present at the Airport Bar and who would be available as witnesses for the prosecution.

Implicit in defendant's *Paris*-based claim is the assumption that, in the absence of express legislation, a trial court is without the inherent authority to grant any pretrial discovery in criminal actions. This is not the law in Michigan. In *People v Johnson,* 168 Mich App 581; 425 NW2d 187 (1988), a case decided three months after *Paris, supra,* this Court affirmed a trial court's order authorizing discovery of a letter written by defendant's girlfriend to his defense counsel. In reaching that conclusion, the *Johnson* Court stated:

> In Michigan, the liberal rules of discovery available in civil proceedings are not equally applicable to criminal cases. MCR 6.001(B). However, this is not to say that discovery in criminal cases is prohibited. *Even where discovery is not authorized by statute or rule, it has long since been recognized that discovery in criminal cases is a matter within the trial court's discretion. People v Freeman (After Remand),* 406 Mich 514, 516; 280 NW2d 446 (1979); *People v Taylor,* 159 Mich App 468, 471-472, n 5; 406 NW2d 859 (1987), lv den 428 Mich 913 (1987), and cases cited therein. Although

this state has not yet decided the issue, there seems to be a growing trend in other jurisdictions to allow prosecutors greater access to the pretrial statements and notes of defense lay witnesses, at least where such does not impinge upon a defendant's constitutional or statutory rights. See *United States v Nobles,* 422 US 225; 95 S Ct 2160; 45 L Ed 2d 141 (1975); Anno: *Right of prosecution to discovery of case-related notes, statements, and reports—state cases,* 23 ALR4th, 799, § 7, pp 830-834. See also, LaFave & Israel, Criminal Procedure (student ed), § 19.4(a) and (g), pp 741-742, 748-750. [168 Mich App 584. Emphasis supplied.]

Similarly, the United States Supreme Court and courts in other jurisdictions have ruled that a trial court, in the absence of an explicit statute, has the inherent authority to permit discovery in criminal cases. In *Nobles, supra,* a trial court's order requiring defendant's investigator to disclose statements that he obtained from persons who, as in the instant case, were available as witnesses to both the prosecution and defense, was held not to violate defendant's Fifth Amendment rights.

In addition to Michigan, a number of jurisdictions hold that a trial court has the inherent authority to grant discovery going beyond the scope of discovery prescribed by statute in criminal cases. *Scott v State,* 519 P2d 774 (Alas, 1974); *Spears v State,* 272 Ind 634; 401 NE2d 331 (1980), modified 272 Ind 647; 403 NE2d 828 (1980); *State v Montague,* 55 NJ 387; 262 A2d 398 (1970); *State v Means,* 268 NW2d 802 (SD, 1978); *State v Hardin,* 558 SW2d 804 (Mo, 1977).[1] In view of the above authority, we reject defendant's claim that, in the absence of new legislation granting broad rights of

[1] Other courts, particularly California, have concluded that in the absence of explicit statutory authority, the better policy is to refuse prosecutorial discovery. *People v Collie,* 30 Cal 3d 43; 177 Cal Rptr 458; 634 P2d 534; 23 ALR4th 776 (1981).

criminal discovery or the Supreme Court's approval of proposed MCR 6.205, the trial court was without the power to grant discovery in the instant case. In our opinion, the rule set forth in *Johnson, supra,* is more applicable to the facts before us than the rule set forth in *Paris, supra.*

Having determined that the trial court had the inherent authority to compel pretrial discovery, we next inquire whether the order of discovery was precluded by the work product rule. In *Nobles, supra,* the United States Supreme Court held that the work product doctrine protects an investigator's report from discovery, but the protection was waived when the defendant placed the investigator on the stand and sought to adduce his testimony.

> At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself. Moreover, the concerns reflected in the work product doctrine do not disappear once trial has begun. Disclosure of an attorney's efforts at trial, as surely as disclosure during pretrial discovery, could disrupt the orderly development and presentation of his case. We need not, however, undertake here to delineate the scope of the doctrine at trial, for in this instance it is clear that the defense waived such right as may have existed to invoke its protections.
>
> The privilege derived from the work product doctrine is not absolute. Like other qualified privileges, it may be waived. Here respondent sought to

adduce the testimony of the investigator and contrast his recollection of the contested statements with that of the prosecution's witnesses. Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony. [422 US 238-239.]

Other jurisdictions are split on whether the work product rule is a defense to an order of discovery. State courts come to contrary conclusions based largely on the degree to which the material sought to be discovered reflects or does not reflect the legal theories, impressions, or trial strategies of counsel. See 23 ALR4th 805. *Commonwealth v Mustone,* 353 Mass 490; 233 NE2d 1 (1968); *Montague, supra; Lepley v Lycoming Co Court of Common Pleas,* 481 Pa 565; 393 A2d 306 (1978).

Michigan has not ruled on the question of to what extent the work product doctrine might protect a defendant from pretrial discovery of statements taken by defendant's investigator. In view of the sparse treatment, both as to the facts and the law, found in the briefs in this case, we decline to decide the issue. Further, for the reasons hereinafter set forth, we do not find it necessary to make that decision. Instead, we will assume that, as argued by defendant, the work product doctrine is applicable and that the trial court erred in ruling to the contrary.

We turn now to what we perceive to be the decisive issue in this case: Is the trial court's presumed error grounds for reversal and a new trial? We conclude that it is not. We have carefully reviewed the transcript of trial and find that at no time did either the prosecution or defense counsel make use of, or even refer to, any of the statements taken by defendant's investigator. At no point during trial or on appeal did defendant

assert, or even suggest, that he was prejudiced by the pretrial disclosure of the witnesses' statements. Admittedly, the pretrial disclosure relieved the prosecution's concern that something in one or more of the statements might be inconsistent with what the witness might say when testifying for the prosecution. But that is hardly the type of prejudice to defendant which merits a new trial.

No claim is made that receipt of the statements disclosed defendant's theory of defense or a surprise witness not already known to the prosecution. From the very outset it was patently apparent that self-defense and intoxication would be raised as defenses. Furthermore, the principal and perhaps only value of the statements to defendant would be their potential use for impeachment purposes. If the statements were used by defendant for impeachment, any immunity from discovery would be waived. *Nobles, supra,* pp 238-239. Thus, not only did the trial court's assumed error not prejudice defendant, but the error would have been waived had defendant used the statements. Under MCR 2.613(A), a trial court's error is not grounds for reversal unless refusal to do so appears to the court to be "inconsistent with substantial justice." See also MCL 769.26; MSA 28.1096. Given the strong testimony against defendant and the non-reference to the disputed statements, it is impossible for us to find the trial court's limited order inconsistent with substantial justice.

Where, as in the instant case, discovery is found to be violative of the work product doctrine, the error is found harmless unless defendant is prejudiced thereby. Thus, even in California, which has adopted a policy of judicial restraint in the absence of explicit legislative authority for discovery, discovery of notes of a defense investigator was

held not to prejudice the defendant even though the notes should have been protected by the work product doctrine. *People v Collie,* 30 Cal 3d 43; 177 Cal Rptr 458; 634 P2d 534; 23 ALR4th 776 (1981). The court reasoned:

> Nevertheless, defendant fails to demonstrate any prejudice from the revelation. The reports reflected solely on the potential utility of a witness who had already been utilized. Thus even if the defense plan to use Ms. Morris was improperly revealed, no harm resulted because it had been already revealed when she was called to the stand by defense counsel. [30 Cal 3d 60.]

In *Spears v State, supra,* the trial court ordered pretrial discovery of the recorded statements or summaries of statements of witnesses whom the defendant intended to call at trial. After finding that the trial court's discovery order violated the work product doctrine, the *Spears* court held that defendant's bald assertion of harm failed to show that the trial court's improper discovery order dictated reversal. In the instant appeal, defendant does not even make a bald assertion of harm.

*State v Sandstrom,* 225 Kan 717; 595 P2d 324 (1979), cert den 444 US 942; 100 S Ct 296; 62 L Ed 2d 308 (1979), involved a pretrial order of discovery directing defense counsel to produce the statements of any witness who would testify for the defense. Relying on *Nobles,* the court first held that the order was erroneous since there was no statutory authorization to compel defense counsel to furnish statements of his witnesses prior to trial. The court then held the error was not prejudicial.

> We find nothing in the record to show that any of the statements were used for the purpose of

impeaching or discrediting any witnesses called by either of the parties. There is nothing to indicate that any of the reports or statements furnished information which enabled the State to obtain evidence to establish the guilt of the defendant. Although the action of the trial court was erroneous in ordering production of the statements and reports by the defense counsel, we find that such action in no way prejudiced the right of the defendant to a fair trial and we decline to reverse the case on this point. [225 Kan 729.]

Factually, *Sandstrom* is similar to the case before us. Like *Sandstrom,* in the instant case there is nothing in the briefs on appeal or in the transcript which indicates that any of the statements given to the prosecution supplied information which enabled the state to establish defendant's guilt. Indeed, as noted earlier, the statements were neither used nor mentioned by either counsel at trial.[2] Accordingly, assuming arguendo that the trial court did err in issuing the order of discovery, we find the error harmless.

Affirmed.

---

[2] Statements made to the police, or at preliminary examination, or given to defense counsel personally were used for impeachment purposes at trial. However, the statements given to defendant's investigator and covered by the trial court's order of discovery at issue in this case were not used.